UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: GARY EDWARD SASSO,  Case No. 7-12-14564 JA

    Debtor.

PHILIP J. MONTOYA, Chapter 7
Trustee of the bankruptcy estate of
Gary Edward Sasso,

    Plaintiff,

v.  Adv. Proc. No. 15-1043 J

GARY EDWARD SASSO,
DEBRA SASSO, ARON FINCH,
and ACE ENTERPRISES, LLC,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Plaintiff's Motion for Partial Summary Judgment on Counts 17 and 18 of the Amended Complaint ("Motion"). *See* Docket No. 46. Counts 17 and 18 of the Amended Complaint seek a declaratory judgment determining, among other things, that the bankruptcy estate has an interest in the following assets: 1) a 2002 Harley Davidson XL8 Motorcycle, VIN # 1HD4GJM182K115436 (the "2002 Harley"); 2) a 2008 Honda VTX180 Motorcycle, VIN # 1HFSC49T18A600008 (the "2008 Honda"); and 3) a 2013 Monte Carlo 40SC Trailer, VIN # 5CZ200R36D1123116 (the "Monte Carlo"). Defendants Gary Edward Sasso and Debra Sasso concede that the 2002 Harley and the 2008 Honda are assets of the bankruptcy estate and entered into a stipulated order to that effect. *See* Stipulated Order Determining Honda and Harley Motorcycles are Property of the Bankruptcy Estate – Docket No. 53. What remains at issue is the ownership of the Monte Carlo.

Plaintiff Philip J. Montoya, Chapter 7 Trustee of the bankruptcy estate of Gary Edward Sasso ("Trustee" or "Plaintiff") contends that the Monte Carlo is community property such that

the bankruptcy estate has a ½ interest in the Monte Carlo.  He asserts that the facts not subject to genuine dispute entitle the Trustee to a declaratory judgment determining that Defendant Gary Sasso (the "Debtor") held a community property interest in the Monte Carlo as of the date he filed his voluntary petition under Chapter 7 of the Bankruptcy Code; that the Debtor failed to list his interest in the Monte Carlo on his bankruptcy schedules; and that the bankruptcy estate has a ½ interest in the Monte Carlo.  Defendants Gary Sasso and Debra Sasso oppose the Motion, asserting that Debra Sasso purchased the Monte Carlo from separate funds she segregated from her social security income.  *See* Sasso's Response to Plaintiff's Motion for Summary Judgment ("Response") – Docket No. 47.  After considering the Motion and the Response, and being otherwise sufficiently informed, the Court finds that genuine issues of material fact concerning whether the Monte Carlo is separate or community property preclude the entry of summary judgment.  The Court will, therefore, deny the Motion.

## SUMMARY JUDGMENT STANDARDS

The Court will grant summary judgment when the requesting party demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056.  "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995)

2

(quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)). The party opposing summary judgment "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996)). To resist a properly supported motion for summary judgment, the opposing party may not rely on the allegations in the complaint or the denials contained in the answer, "but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotation marks omitted).

## FACTS NOT SUBJECT TO GENUINE DISPUTE

Defendants do not contest any of the facts the Trustee identified in the Motion as not being subject to genuine dispute. The following facts relate to the issues surrounding the nature of the ownership of the Monte Carlo:

1. Defendants have been married since May 23, 2001.

2. On July 13, 2013, Debra Sasso purchased the Monte Carlo.

3. Defendants attempted to sell real property located at 69B Range Rd, Edgewood, New Mexico (the "Range Road Property") to LeighAnn and Samuel Harrison.

4. The Harrisons delivered monthly payments to the Debtor for the purchase of the Range Road Property.

5. Debtor gave all of the payments from the Harrisons for the purchase of the Range Road Property to Debra Sasso to repay her for her purchase of the Monte Carlo.

3

DISCUSSION

New Mexico is a community property state. *See Strong v. Eakin,* 11 N.M. 107, 108, 66 P. 539, 540 (1901) ("[T]he Spanish-Mexican law as to community or acquest property became the law of this territory from the time of the cession, and is still in force in so far as the same has not been modified by statute.") (citations omitted).[1] "Community property" is statutorily defined as "property acquired by either or both spouses during marriage which is not separate property." N.M.S.A. 1978 § 40-3-8(B). Under New Mexico law there is a presumption that all property acquired by either spouse during the marriage is community property. *See* N.M.S.A. 1978 § 40-3-12(A) ("Property acquired during marriage by either husband or wife, or both, is presumed to be community property."); *Campbell v. Campbell,* 62 N.M. 330, 340, 310 P.2d 266, 272 (1957) ("The presumption that all property acquired after marriage is community property was part of Spanish community property law and was recognized as an element of the community property system in this state prior to the time of its statutory pronouncement . . .") (citations omitted); *Stroshine v. Stroshine,* 98 N.M. 742, 743, 652 P.2d 1193, 1194 (1982) ("[P]roperty acquired by either or both spouses during their marriage is presumptively community property.") (citations omitted). A party asserting that property acquired during the marriage is, in fact, separate property, can overcome the presumption of community property by producing evidence of the separate character of the property by a preponderance of the evidence. *See Nichols v. Nichols,* 98 N.M. 322, 327, 648 P.2d 780, 785 (1982) ("A party asserting that such property is separate has the burden of presenting evidence that would rebut the presumption by a preponderance of the evidence.") (citations omitted); *Campbell,* 62 N.M. at 341, 310 P.2d at 273 ("[T]he

---

[1] *See also, Eaves v. United States,* 433 F.2d 1296, 1296 (10th Cir. 1970) (acknowledging that New Mexico is a community property state); *Chavez v. Skehen (In re Chavez),* 305 B.R. 381, 2003 WL 23120081, *5 (10th Cir. BAP Dec. 18, 2003) (unpublished) (stating that "New Mexico is a community property state.").

4

contestant asserting the separate character of the property has not only the burden of going forward with his evidence, but of establishing separate ownership by a preponderance of evidence.") (citation omitted).

The facts not subject to genuine dispute establish that Debra Sasso purchased the Monte Carlo during her marriage to the Debtor. Under these facts, the Monte Carlo is presumed to be community property. To rebut the presumption, Defendants rely on excerpts from the deposition of Debra Sasso and the deposition of Gary Sasso concerning the acquisition of the Monte Carlo as evidence that the Monte Carlo is Debra Sasso's separate property. Defendants direct the Court to the following deposition testimony of Debra Sasso:

> Q: Does that sound about right that you purchased this [the Monte Carlo] in July 2013?
>
> A: It was that exact date because I broke three CDs and put into that from my savings.
>
> Q: Where did you get the money for the CDs?
>
> A: I saved it since '07. I had three back pays, monies that came in over a four-year period. I can prove that from the Social Security's office. The woman and man that was my advocate. When Gary's mom was dying, it was another $40,000 check when I got back form that trip and I put it away. Yes, I basically thought Gary would try to take it away from me. I bought that because I had no home.

Deposition of Debra K. Speakman Sasso dated May 4, 2015 ("Speakman Deposition"), p. 88, lines 9 – 21 – Motion, Exhibit D.

> Q: Did Ms. McMillan give you a Certificate of title for the trailer [Monte Carlo]?
>
> A: Yes, and I have it and Gary took it away from me. Gary took it away from me. He don't know I have it.
>
> Q: Why did Gary take it away from you?
>
> A: Because he didn't want it titled in my name. He tried to take it away. It's our only way of making a living. He wouldn't let me title it in my name. He took it and hid it. I tricked him two months ago and told him I tore it up and shredded it. He would not let me title it in my name. That's it. He thinks I tore it up. This is ridiculous I have to say all of this. I shouldn't be part of anything. That's the only thing I ever bought with my disability money or helping my kids or charity.
>
> Q: Tell me why the title was not transferred into your name?

5

A: Because Gary wouldn't let me. I said, "Margaret said we have to change it over, Gary, nobody is going to do anything about this. He wouldn't let me and he took it and he hid it and he said, "You can't have it. I will find the money to pay you for this trailer, it will be my trailer, and we are not moving the trailer so it don't need to be titled."

Speakman Deposition, p. 90, lines 4 – 18 and p. 91, lines 3 – 10.

The Debtor gave corroborating deposition testimony regarding the Monte Carlo, upon which Defendants also rely in their Response:

Q: Did your wife buy the Monte Carlo trailer with her own money?

A: Yes, sir.

Video Deposition of Gary Sasso, dated May 28, 2015 ("Debtor Deposition").

Additional deposition testimony suggests that Debtor intended to repay Debra Sasso for the Monte Carlo trailer:

Q: Did you have an agreement with your wife that she would collect the payments from the Harrisons and then you would own the Monte Carlo trailer?

A: Well, the agreement was I wanted to pay her back for the Monte Carlo trailer, because as a man that's something that I should have been able to buy, and when you are married in this state it doesn't matter, obviously you've made that point very clear, it doesn't matter who you are, if you bought something and your wife didn't know about it, she owns half of it anyways. I'm learning real quick.

Debtor Deposition, p. 83, lines 12 – 22.

Property acquired in a community property state achieves its character upon acquisition. *See Nichols,* 98 N.M. at 327, 648 P.2d at 785 ("'Property acquired in community property states takes its status as community or separate property at the very time it is acquired, and is fixed by the manner of its acquisition.'") (quoting *Laughlin v. Laughlin,* 49 N.M. 20, 37, 155 P.2d 1010, 1020 (1944) (citations omitted)).[2] Separate property can later be transmuted into community

---

[2] *See also, Burlingham v. Burlingham,* 72 N.M. 433, 443, 384 P.2d 699, 707 (1963) (observing that, "the property of the wife takes the status as separate or community property as of the time of its acquisition") (citation omitted); *Franklin v. Franklin,* 116 N.M. 11, 17, 859 P.2d 479, 485 (Ct.App. 1993) ("property takes its status as community or separate at the time and by the manner of its acquisition.") (citation omitted).

6

property. *See Nichols,* 98 N.M. at 327, 648 P.2d at 785 (cautioning that "[t]he determination of [a property's] legal status as separate or community property is merely the initial inquiry, however, because the spouses are permitted to change the property's status.") (citations omitted); *Allen v. Allen,* 98 N.M. 652, 654, 651 P.2d 1296, 1298 (1982) ("Transmutation is a general term used to describe arrangements between spouses to convert property from separate property to community property and vice versa.") (citation omitted); *Trinosky v. Johnstone,* 2013 WL 4515931, *6 (N.M.Ct.App. July 17, 2013) (Unpublished) ("'Even in the absence of an agreement, separate property can be transmuted into community property if it is commingled with community property in such a manner that it is impossible to trace or segregate.'") (quoting 37 Am.Jur.2d Proof of Facts 379 § 8 (1984)). But "as long as the identity of the property or funds can be traced and identified, a wife's separate estate may undergo changes and mutations without affecting its character as separate property." *Burlingham,* 72 N.M. at 443-44, 384 P.2d at 707 (citations omitted). *See also, Campbell,* 62 N.M. at 357, 310 P.2d at 284 ("if acquired as separate property, it retains such character even though community funds may later be employed in making improvements or discharging an indebtedness thereon.") (citations omitted). Social security benefits are generally considered separate property. *See English v. English,* 118 N.M. 170, 175-76, 879 P.2d 802, 807-08 (Ct.App. 1994) ("Social security benefits are considered separate property and cannot be used to set off an equal distribution of community property upon divorce.") (citation omitted); *Trinosky,* 2013 WL 4515931 at *5 (observing "that social security benefits are generally separate property absent transmutation") (relying on *English,* 118 N.M. 170, 879 P.2d 802).[3] "Once initial legal status of property is determined, a change in that status

---

[3] *See also, In re Marriage of Peterson,* 243 Cal.App.4th 923, 197 Cal.Rptr.3d 588 (Ct.App. 2016) (determining that federal social security law preempts state community property law, and that social security is separate property under federal law); *Luna v. Luna,* 125 Ariz. 120, 123, 608 P.2d 57, 60 (Ct.App. 1979) (holding that "the Social

is a transmutation issue which must be proven by clear, strong, and convincing evidence." *Beneficial Fin. Co. of New Mexico v. Alarcon,* 112 N.M. 420, 423, 816 P.2d 489, 492 (1991) (citation omitted).[4]

Defendants have raised genuine issues of material fact with respect to the character of the Monte Carlo sufficient to resist summary judgment. If Debra Sasso in fact purchased the Monte Carlo trailer using only her social security income, and if the social security income she received and used to purchase the Monte Carlo constitutes her separate property as a matter of law, then the Monte Carlo was first acquired as Debra Sasso's separate property. Such evidence would rebut the presumption that the Monte Carlo acquired while Defendants were married is community property. On the other hand, even if Defendants establish that the Monte Carlo was Debra Sasso's separate property at the time of its acquisition, the Trustee may be able to present sufficient evidence that the Monte Carlo was transmuted to community property or that he purchased it from her. These fact issues cannot be resolved based on the undisputed facts now before the Court.

*Treating facts as established in this adversary proceeding pursuant to Rule 56(g)*

The Trustee's Motion includes a request pursuant to Fed.R.Civ.P. 56(g) to treat the facts the Trustee identified in the Motion as undisputed as established facts in this adversary proceeding. Defendants did not object to this request. Rule 56(g), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056, provides:

---

Security disability benefits received by petitioner are his separate property and no offsetting award ban be made to respondent/appellee.").
[4] *See also, Allen,* 98 N.M. at 654, 651 P.2d at 1298 ("While transmutation is recognized, the party alleging the transmutation must establish the transmutation of property to community property by clear, strong and convincing proof.") (citations omitted).

> If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

Fed.R.Civ.P. 56(g).

Some of the numbered undisputed material facts in the Motion relate to the 2008 Honda and the 2002 which the parties have stipulated are property of the bankruptcy estate. *See* Docket No. 53. It is, therefore, unnecessary for the Court to deem those facts as established in this adversary proceeding. The Court finds it appropriate to treat as established in this adversary proceeding facts set forth in paragraphs numbered 1 through 5 listed by the Court above as facts not subject to genuine dispute, as well as the following facts the Trustee identified as undisputed in the Motion:

6. Debtor did not disclose any interest in the Monte Carlo on his Schedules. *See* Motion, ¶ 15.

7. On February 14, 2013, the Trustee held a meeting of creditors pursuant to 11 U.S.C. § 341, at which he examined the Debtor under oath. *See* Motion, ¶ 16.

8. At the 341 Meeting, the Debtor testified under oath that his schedules and statements were true and correct. *See* Motion, ¶ 17.

9. At the 341 Meeting, the Debtor testified under oath that he listed everything he owned. *See* Motion, ¶ 18.

10. At the 341 Meeting, the Debtor testified under oath that he did not own any automobiles. *See* Motion, ¶ 19.

Based on the foregoing, the Court concludes that genuine issues of material fact regarding the character of the Monte Carlo preclude summary judgment. But the Court will treat

9

certain facts identified as undisputed as established in this adversary proceeding. The Court will

enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 14, 2016

COPY TO:

Edward Alexander Mazel
Michelle Ostrye
Attorneys for Plaintiff
Askew & Mazel, LLC
320 Gold Ave. SW, Suite 300A
Albuquerque, NM 87102

Gary Edward Sasso
Defendant
PO Box 50513
Albuquerque, NM 87181

Debra Sasso
Defendant
69B Range Rd.
Edgewood, NM 87015