UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: GARY EDWARD SASSO,
    Debtor.

No. 7-12-14564 JA

PHILIP J. MONTOYA, Chapter 7 Trustee,

   Plaintiff,

v.

Adv. No. 15-1043 J

GARY EDWARD SASSO, DEBRA K. SASSO,
ACE ENTERPRISES, INC., and ARON FINCH,

   Defendant.

## MEMORANDUM OPINION

This adversary proceeding is before the Court for a trial on the merits. The Chapter 7 Trustee, Philip J. Montoya (the "Chapter 7 Trustee" or "Trustee"), by and though his attorneys Askew & Mazel, LLC ("A&M"), seeks a declaratory judgment that the Debtor had a community interest in the 2013 Monte Carlo 40SC Trailer, with the VIN # 5CZ200R36D1123116 (the "Monte Carlo") as of the Petition Date and that Debtor failed to list his interest in the Monte Carlo on his bankruptcy schedules.[1] Defendants[2], the Debtor and his non-filing spouse, Debra K. Sasso, contend that Mrs. Sasso purchased the Monte Carlo from separate funds she accumulated from her social security income such that the Debtor did not have a community interest in it as of the Petition Date.

---

[1] First Amended Complaint, p. 19, ¶¶ 141-142 (Docket No. 12).
[2] The Chapter 7 Trustee settled all claims against Aron Finch and Ace Enterprises, Inc. prior to trial.

A.   *Findings of Fact.*

In accordance with Fed. R. Civ. P 52(a)(1), made applicable by Fed. R. Bankr. P. 9014, the Court finds the following facts.[3]

The Debtor and Mrs. Sasso have been married since May 23, 2001.[4] On September 19, 2009, Mrs. Sasso purchased three certificates of deposit with Wells Fargo totaling $35,000.00 (the "Certificates of Deposit").[5] Other than Mrs. Sasso's uncorroborated testimony, there is no evidence she purchased the Certificates of Deposit with separate funds. On July 13, 2013, Mrs. Sasso liquidated the Certificates of Deposit and purchased a cashier's check in the amount of $28,000.00 (the "Cashier's Check").[6] On the same day, Mrs. Sasso negotiated the Cashier's Check to Margret McMillian as payment for the Monte Carlo.[7] In exchange, Ms. McMillian gave Mrs. Sasso the Monte Carlo and it's Certificate of Title (the "Certificate of Title").[8] There is no evidence regarding in whose name the Monte Carlo was titled.

The Debtor and Mrs. Sasso attempted to sell real property located at 69B Range Rd, Edgewood, New Mexico (the "Range Road Property") to LeighAnn and Samuel Harrison.[9] The Harrisons delivered monthly payments to the Debtor for the purchase of the Range Road Property.[10] The Debtor gave the payments from the Harrisons for the purchase of the Range Road Property to Mrs. Sasso to repay her for her purchase of the Monte Carlo.[11]

---

[3] To the extent that the discussion section contains findings of fact, the findings of fact are incorporated herein by this reference.
[4] Order Denying Plaintiff's Motion for Partial Summary Judgment with Respect to Monte Carlo Trailer, and Granting Plaintiff's Motion Pursuant to Rule 56(g) to Treat Undisputed Facts as Established (Docket No. 73) ("Rule 56(g) Order"), p. 1, ¶ 1.
[5] Trustee's Exhibit 8; Trustee's Exhibit 7, p. 88, lines 13-17.
[6] Trustee's Exhibit 7, p. 88, lines 13-17, and Exhibit 31 to Trustee's Exhibit 7.
[7] Trustee's Exhibit 7, pp. 88-90; Rule 56(g) Order, p. 1, ¶ 2.
[8] Trustee's Exhibit 7, pp. 88-90.
[9] Rule 56(g) Order, p. 1, ¶ 3.
[10] *Id.* at p. 1, ¶ 4.
[11] *Id.* at p. 2, ¶ 5.

2

The Debtor did not disclose any interest in the Monte Carlo on his Schedules.[12] On February 14, 2013, the Trustee held a meeting of creditors pursuant to 11 U.S.C. § 341, at which he examined the Debtor under oath.[13] At the § 341 Meeting, the Debtor testified under oath that his schedules and statements were true and correct.[14] At the 341 Meeting, the Debtor testified under oath that he listed everything he owned.[15] At the 341 Meeting, the Debtor testified under oath that he did not own any automobiles.[16]

### B.  Discussion.

#### i.  Determining Credibility and Weighing Evidence Submitted.

In adversary proceeding trial, the bankruptcy court sitting without a jury has the duty to make findings of fact.[17] The Court makes findings of fact by considering all admitted evidence, assessing its credibility, and determining its relative weight.[18] The bankruptcy court is granted broad authority to assess credibility and determine weight of admitted evidence and will not be overturned absent clear error.[19] The bankruptcy court's duty and authority to assess credibility and weigh admitted testamentary evidence applies to deposition transcripts as well as oral testimony.[20] In assessing the credibility of transcribed testimony, the bankruptcy court may

---

[12] *Id.* at p. 2, ¶ 6.
[13] Rule 56(g) Order, p. 2, ¶ 7.
[14] *Id.* at p. 2, ¶ 8.
[15] *Id.* at p. 2, ¶ 9.
[16] *Id.* at p. 2, ¶ 10
[17] Fed. R. Bankr. P. 7052 (making Fed. R. Civ. P. 52(a) applicable in adversary proceedings).
[18] *See State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 411–12 (10th Cir. 1984) ("The court below has the exclusive function of appraising credibility, determining the weight to be given the testimony, drawing inferences from facts established, and resolving conflicts in the evidence." (citing *Rasmussen Drilling, Inc. v. Kerr McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir. 1978), cert. denied, 439 U.S. 862 (1978))).
[19] *See In re Sierra Trading Corp.*, 482 F.2d 333, 336-37 (10th Cir. 1973) (holding that a trial court's findings of fact based on evidence that was "essentially documentary in nature," will not be overturned if there is reasonable and logical support for them in the record). *See also Dalton v. I.R.S.*, 77 F.3d 1297, 1302 (10th Cir. 1996) (holding that findings of fact are reviewed for clear error).
[20] *See Skinner v. Parnell*, 257 F.2d 345, 347 (10th Cir. 1958) ("This court, whether reviewing testimony given orally to the trial court or submitted by deposition, does not weigh credibility anew and cannot say that the trial court could not rely on the credence of testimony given by deposition.").

consider: (i) deficiencies in the testimony; (ii) consistencies or inconsistencies between the testimony and other testimony or documentary evidence; (iii) whether the testimony is self-serving; and (iv) whether the witness is biased.[21] The bankruptcy court may also use common sense, knowledge, and experience in making its credibility assessment.[22]

Here, the only testamentary evidence admitted at trial was the transcript of the depositions of the Debtor and Mrs. Sasso and of the § 341 meeting held in the bankruptcy case. The Court found the testimony contained in the transcripts, standing alone, to have low probative value, particularly where the testimony was self-serving. Where the testimony was either against the witness's self-interest or corroborated by documentary evidence, the Court found it more credible and assigned it more weight. The Court's findings of fact stated above were made in accordance with its credibility assessments and weight determination.

    ii. *The Monte Carlo is Community Property.*

New Mexico is a community property state.[23] "Community property" is statutorily defined as "property acquired by either or both spouses during marriage which is not separate property."[24]

---

[21] *See United States v. Smith*, 156 F.3d 1046, 1053 (10th Cir. 1998) (holding that jurors may consider inconsistencies and deficiencies in testimony when assessing witness credibility); *Sorrentino v. I.R.S.*, 383 F.3d 1187, 1198 (10th Cir. 2004) ("The self-serving quality of the testimony goes to its credibility, which is to be judged by the trier of fact.") *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999) ("Bias is always relevant in assessing a witness's credibility."). *See also* Tenth Circuit Criminal Pattern Jury Instructions, Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, 1.08 (2011, rev. 2015) (listing numerous factors for the jury to consider when assessing credibility).

[22] *Smith*, 156 F.3d at 1053 ("[J]urors using common sense and their faculties of observation can judge the credibility of an eyewitness identification, especially since deficiencies or inconsistencies in an eyewitness's testimony can be brought out with skillful cross-examination."); *McEwen v. City of Norman, Okl.*, 926 F.2d 1539, 1546 (10th Cir. 1991) (holding that jurors do not need expert testimony on matters of common knowledge); *Franklin Life Ins. Co. v. Heitchew*, 146 F.2d 71, 74 (5th Cir. 1944) (holding that the judge and jury may rely upon common knowledge and experience without proof).

[23] *See Strong v. Eakin,* 11 N.M. 107, 108, 66 P. 539, 540 (1901) ("[T]he Spanish-Mexican law as to community or acquest property became the law of this territory from the time of the cession, and is still in force in so far as the same has not been modified by statute.") (citations omitted). *See also, Eaves v. United States,* 433 F.2d 1296, 1296 (10th Cir. 1970) (acknowledging that New Mexico is a community property state); *Chavez v. Skehen (In re Chavez),* 305 B.R. 381, 2003 WL 23120081, *5 (10th Cir. BAP Dec. 18, 2003) (unpublished) (stating that "New Mexico is a community property state.").

[24] N.M.S.A. 1978 § 40-3-8(B).

4

Property acquired in a community property state achieves its character upon acquisition.[25] Under New Mexico law, all property acquired by either spouse during the marriage is presumed to be community property.[26] A party asserting that property acquired during the marriage is, in fact, separate property, can overcome the presumption of community property by producing evidence of the separate character of the property by a preponderance of the evidence.[27] "[A]s long as the identity of the property or funds can be traced and identified, a wife's separate estate may undergo changes and mutations without affecting its character as separate property."[28]

The central issue in this adversary proceeding is: whether the Monte Carlo is Mrs. Sasso's separate property. The Court begins with the presumption that the Monte Carlo is community

---

[25] *See Nichols,* 98 N.M. at 327, 648 P.2d at 785 ("'Property acquired in community property states takes its status as community or separate property at the very time it is acquired, and is fixed by the manner of its acquisition.'") (quoting *Laughlin v. Laughlin,* 49 N.M. 20, 37, 155 P.2d 1010, 1020 (1944) (citations omitted)). *See also, Burlingham v. Burlingham,* 72 N.M. 433, 443, 384 P.2d 699, 707 (1963) (observing that, "the property of the wife takes the status as separate or community property as of the time of its acquisition") (citation omitted); *Franklin v. Franklin,* 116 N.M. 11, 17, 859 P.2d 479, 485 (Ct. App. 1993) ("property takes its status as community or separate at the time and by the manner of its acquisition.") (citation omitted).

[26] *See* N.M.S.A. 1978 § 40-3-12(A) ("Property acquired during marriage by either husband or wife, or both, is presumed to be community property."); *Campbell v. Campbell,* 62 N.M. 330, 340, 310 P.2d 266, 272 (1957) ("The presumption that all property acquired after marriage is community property was part of Spanish community property law and was recognized as an element of the community property system in this state prior to the time of its statutory pronouncement . . .") (citations omitted); *Stroshine v. Stroshine,* 98 N.M. 742, 743, 652 P.2d 1193, 1194 (1982) ("[P]roperty acquired by either or both spouses during their marriage is presumptively community property.") (citations omitted).

[27] *See Nichols v. Nichols,* 98 N.M. 322, 327, 648 P.2d 780, 785 (1982) ("A party asserting that such property is separate has the burden of presenting evidence that would rebut the presumption by a preponderance of the evidence.") (citations omitted); *Campbell,* 62 N.M. at 341, 310 P.2d at 273 ("[T]he contestant asserting the separate character of the property has not only the burden of going forward with his evidence, but of establishing separate ownership by a preponderance of evidence.") (citation omitted).

[28] *Burlingham,* 72 N.M. at 443-44, 384 P.2d at 707 (citations omitted). *See also, Campbell,* 62 N.M. at 357, 310 P.2d at 284 ("if acquired as separate property, it retains such character even though community funds may later be employed in making improvements or discharging an indebtedness thereon.") (citations omitted). Social security benefits are generally considered separate property. *See English v. English,* 118 N.M. 170, 175-76, 879 P.2d 802, 807-08 (Ct. App. 1994) ("Social security benefits are considered separate property and cannot be used to set off an equal distribution of community property upon divorce.") (citation omitted); *Trinosky,* 2013 WL 4515931 at *5 (observing "that social security benefits are generally separate property absent transmutation") (relying on *English,* 118 N.M. 170, 879 P.2d 802). *See also, In re Marriage of Peterson,* 243 Cal.App.4th 923, 197 Cal.Rptr.3d 588 (Ct. App. 2016) (determining that federal social security law preempts state community property law, and that social security is separate property under federal law); *Luna v. Luna,* 125 Ariz. 120, 123, 608 P.2d 57, 60 (Ct. App. 1979) (holding that "the Social Security disability benefits received by petitioner are his separate property and no offsetting award ban be made to respondent/appellee.").

5

property because Mrs. Sasso purchased it during her marriage to the Debtor.[29] In light of the presumption, the burden of production shifts to the Debtor and Mrs. Sasso to submit evidence rebutting that presumption.[30]

Mrs. Sasso purchased the Monte Carlo with the Cashier's Check, which she purchased with funds she received from the liquidation of the Certificates of Deposit.[31] The Certificates of Deposit are presumed to be community property because they were also purchased during her marriage to the Debtor.[32] Mrs. Sasso testified in her deposition that she has received Social Security Disability income since 2007.[33] She further testified that she received three lump sum payments from the Social Security Administration after her application was approved.[34] She also testified that she used a portion of the lump sum payments to purchase the Certificates of Deposit.[35] The Debtor and Mrs. Sasso did not produce any evidence to support Mrs. Sasso's conclusory testimony that she purchased the Monte Carlo with Social Security Disability benefit proceeds. Further, there is no evidence of how the Monte Carlo was titled after it was purchased. The Debtor and Mrs. Sasso waived their right to submit evidence at trial by failing to appear in person. The Court finds that Mrs. Sasso's testimony on this issue lacks sufficient credibility, because it is self-serving and uncorroborated, to establish by a preponderance of the evidence that she purchased the Certificates of Deposit with Social Security Disability benefit proceeds. Further, even if separate funds were used, there is no evidence the Monte Carlo was titled in Mrs. Sasso's name. Therefore, the Court

---

[29] *See* Trustee's Exhibit 7, pp. 88-90. *See also* Rule 56(g) Order, p. 1, ¶ 2.
[30] *See* Fed. R. Evid. 301 ("[T]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption.").
[31] Trustee's Exhibit 7, p. 88-90, and Exhibit 31 to Trustee's Exhibit 7; Rule 56(g) Order, p. 1, ¶ 2.
[32] *See* N.M.S.A. 1978 § 40-3-12(A); Rule 56(g) Order, p. 1, ¶ 1; Trustee's Exhibit 8; Trustee's Exhibit 7, p. 88, lines 13-17.
[33] Trustee's Exhibit 7, p. 88, lines 13-17.
[34] *Id.*
[35] *Id.*

6

concludes that Mrs. Sasso's testimony is insufficient to rebut the presumption that the Certificates of Deposit were community property.

The Court does not reach this conclusion lightly. It is possible that Mrs. Sasso purchased the Certificates of Deposit with her separate funds. However, the Debtor and Mrs. Sasso had a full and fair opportunity to appear in person at trial and present evidence corroborating Mrs. Sasso's testimony. They simply did not take advantage of that opportunity. If the Debtor or Mrs. Sasso could have produced corroborating evidence and chose not to, then they only have themselves to blame for the outcome.

### C. Conclusion.

Based on the foregoing, the Court will enter a declaratory judgment in favor of Plaintiff, Philip J. Montoya Chapter 7 Trustee, providing that, as of the Petition Date, the Monte Carlo was a community interest of the Debtor and Mrs. Sasso. The Court will also order the Debtor and Mrs. Sasso to turnover the Monte Carlo to the Chapter 7 Trustee no later than November 30, 2016.[36]

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: October 25, 2016

---

[36] At trial, the Debtor appeared by telephone. The Court permitted him to make argument but not to present evidence. The Court granted the Debtor's request that, if it ruled that the Monte Carlo was community property, it would give the Debtor and Mrs. Sasso sometime to find other living arrangements before requiring turnover of the Monte Carlo to the Trustee.

7

COPY TO:

Edward Alexander Mazel
Askew & Mazel, LLC
320 Gold Ave S.W.
Suite 300A
Albuquerque, NM 87102

Gary Edward Sasso
PO Box 50513
Albuquerque, NM 87181

Debra Sasso
69B Range Rd.
Edgewood, NM 87015